## COLE v. WEBB.

(Court of Civil Appeals of Texas. Austin. May 8, 1912. On Motion for Rehearing, June 19, 1912.)

1. JUDGMENT (§ 714*)—CONCLUSIVENESS.

A judgment in an action for 150 acres which, so far as it affects a defendant, is only a judgment of dismissal, and which is a default judgment against a codefendant, and which does not define the boundaries of the 150 acres, does not estop defendant from relying on limitations in a subsequent action for a tract included within the 150 acres.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. §§ 1240, 1242, 1243; Dec. Dig. § 714.*]

2. BOUNDARIES (§ 37*) — EVIDENCE — SUFFICIENCY.

In an action to recover land, evidence *held* to support a finding that the land was within the boundaries of a designated league, and hence within boundaries described in deeds under which defendant claimed.

[Ed. Note.—For other cases, see Boundaries, Cent. Dig. §§ 184–194; Dec. Dig. § 37.*]

3. TRESPASS TO TRY TITLE (§ 35*)—ISSUES.

Where a plaintiff, suing to recover land, described the land and did not seek the recovery of any land west thereof, the fact that defendant inclosed and claimed land west of the described land was immaterial.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 50–52; Dec. Dig. § 35.*]

4. TRIAL (§ 234*)—INSTRUCTIONS—BURDEN OF PROOF.

Where plaintiff, suing for land, alleged that there was an offset in a line, while the field notes called for a straight line, and the court charged that where the calls are for a straight line the party claiming an offset has the burden of proving it, and that if there was an offset plaintiff could recover, a charge that the fact that the line was to be a straight line could not control in case it was shown to the satisfaction of the jury by preponderance of the evidence that the line was not in fact a straight line when originally located on the land, was not objectionable as placing too great a burden on plaintiff.

[Ed. Note.—For other cases, see Trial, Cent. Dig. §§ 534–538, 566; Dec. Dig. § 234.*]

5. TRESPASS TO TRY TITLE (§ 16*)—TITLE OF PLAINTIFF—EVIDENCE.

Where, in an action for the recovery of land, defendant showed a good paper title to land included in the boundaries of a designated league, and the land in dispute was within such league, he was entitled to recover without reference to his plea of limitation.

[Ed. Note.—For other cases, see Trespass to Try Title, Cent. Dig. §§ 20, 23; Dec. Dig. § 16.*]

6. ADVERSE POSSESSION (§ 106*)—POSSESSION UNDER DEED.

A possession of land by a grantee ripens into title under the 10-year statute of limitation, where such possession continues for 10 years and the land is within the limits of a deed under which he claims.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 604–623; Dec. Dig. § 106.*]

*On Motion for Rehearing.*

7. APPEAL AND ERROR (§ 1064*)—HARMLESS ERROR—ERRONEOUS INSTRUCTIONS.

Where, in an action to recover land, the undisputed evidence showed that defendant acquired title under the 10-year statute of limitations, the error in an instruction on the subject of the 3-year statute of limitation, also pleaded, was not prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 4219, 4221–4224; Dec. Dig. § 1064.*]

Appeal from District Court, Bell County; John D. Robinson, Judge.

Action by George W. Cole, Jr., against Joseph H. Webb. From a judgment for defendant, plaintiff appeals. Affirmed.

W. K. Saunders and Monteith & Monteith, all of Belton, for appellant. A. L. Curtis, of Belton, Winbourn Pearce, of Belton, and J. H. Evetts, of Temple, for appellee.

### Findings of Fact.

JENKINS, J. (a) Plaintiff brought suit to recover the following described tract of land, to wit: 71 acres of land, more or less out of the Peyton Bland survey in Bell county, Tex., "beginning on the west bank of the Leon river at the N. E. or upper corner of a 510.41-acre tract conveyed to Joseph W. Webb by John D. May and wife Leona May, by deed dated November 11, 1859, recorded in Book H, p. 261, of the deed records of Bell county, Texas, from which a hackberry now standing bears S. 64° W. 1½ varas; thence N. 71° W. with the N. line of said 510.41-acre tract, 2,100 varas, to its N. W. corner, which is also the original N. W. corner of the Aaron Ashworth league, and the N. E. corner of the Wm. R. Carey 640-acre survey; thence N. 19° W. about 187 varas to a stone mound made by H. E. Bradford for the N. W. corner of said Ashworth league; thence S. 71° E. with a newly marked line, run and marked by said Bradford in about 1897, —— varas, to the west bank of the Leon river; thence down said river with its meanders to the place of beginning."

(b) Defendant pleaded not guilty, the stat-

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

utes of three, five, and ten years' limitations, and improvements in good faith.

(c) Plaintiff showed a good paper title to 150 acres out of the southwest corner of the Peyton Bland survey, extending eastward to the Leon river.

(d) The defendant showed a good paper title to so much of a tract of 510.41 acres, deeded to him by J. D. May, as is included in the bounds of the Aaron Ashworth league; the descriptive part of said deed being as follows: "On the west side of the Leon river in Bell county, it being a part of the Aaron Ashworth headright survey for one league of land and described as follows, to wit: Beginning at the N. W. corner of said headright, a pile of rocks, from which a live oak marked A bears N. 5½° W. 29 varas off; thence S. 19° W. at 1,300 varas made a rock mound for the S. W. corner of this survey, from which a live oak marked H bears N. 22° E. 187.5 vrs. off; thence S. 71° E. at 950 vrs. enter timber, at 2,700 vrs. a rock mound for the S. E. corner from which a cedar marked H bears S. 71° E. 7 vrs., another marked H bears N. 42° W. 3.5 vrs. off; thence N. 19° E. at 290 vrs. set a stake on the bank of the Leon river from which an elm marked H bears S. 81° W. 3 vrs. a gumelastic bears S. 35° W. 2.5 vrs.; thence up said river with its meanderings, 1,600 varas, to a stake on the bank of said river in the north line of said league survey from which a hackberry marked X bears S. 64° W. 1.5 vrs. off; thence N. 71° W. 2,100 vrs. to the place of beginning containing five hundred and ten and ⁴¹/₁₀₀ acres of land more or less."

(e) The Ashworth and the Peyton were contemporaneous surveys made by Geo. B. Erath in March, 1840; the field notes of said surveys being as follows: The Ashworth "beginning at the N. E. corner of Eaton's survey; thence N. 19° E., 3,500 vrs., to the N. E. corner from which a bunch of live oaks brs. N. 35° E. 115 varas; thence N. 71° W., 7,142 vrs., to the N. W. corner, from which a Spanish oak, mkd. N., brs. S. 5° W., 6 vrs.; another marked E brs. N. 5° E. 6 vrs.; thence S. 19° W. 2,000 vrs. enter timber; 3,440 vrs., a branch, 3,500 vrs. a pile of rocks for the S. W. corner; thence S. 71° E. 10 vrs., a branch, 2,792 vrs. crosses the Leon, 7,142 varas to beginning." The Peyton Bland, "beginning 1,900 vrs. N. 71° W. from the N. E. corner of a survey for N. (A) Ashworth at a stake from which a live oak bears S. 7° W. 59 vrs., another N. 71° W. 99 vrs.; thence N. 19° E. 3,240 vrs. to a mound for the N. E. corner; thence N. 71° W. 1,200 vrs. enter timber 5,200 vrs. to the Leon, 5,450 vrs. to a pile of rocks for the N. W. corner; thence S. 19° W. 3,240 varas to the S. W. corner, from which an elm brs. S. 66° E. 80 vrs., marked D and a live oak marked C brs. S. 17° W. 60 vrs.; thence S. 70° (71°) E. 5,450 vrs. to the beginning."

(f) The defendant had been in the actual possession of the land conveyed in the deed from said May, claiming the same, for 40 years, during all of which time said deed was duly recorded, and had paid all taxes on said land.

(g) Plaintiff's vendor brought suit in the district court of Bell county against the defendant, Webb, and one W. B. Teague for 150 acres, alleged by plaintiff to have included the 71 acres herein sued for. In so far as the judgment in said case affected Webb, it amounted to no more than a judgment of dismissal. There was a judgment by default against Teague, but said judgment did not attempt to define the boundaries of said 150 acres of land.

The case was submitted to the jury upon the issue of boundary and also of limitation. The jury returned a verdict in favor of defendant, and judgment was entered in accordance therewith.

### Opinion.

[1] 1. This is the second appeal in this case, and this court on the former appeal held that a judgment in a former suit did not estop the defendant from asserting limitation in this case. Webb v. Cole, 56 Tex. Civ. App. 185, 120 S. W. 945. As several of appellant's assignments of error are based upon said judgment, we will here say that, for the reason set out in finding of fact "g" herein, said judgment was immaterial to any issue in this case.

[2] 2. Appellant's first assignment of error is that the verdict of the jury is not supported by the evidence, in so far as the same was based upon the contention of appellee that the land sued for is within the boundaries of the Ashworth league. To this we cannot agree.

The evidence of the surveyors Rucker and Turner indicates that they found the S. W. corner of the Bland, and identified same by one of its bearing trees, and that running thence S. 71° E. they found an old stone mound for N. W. corner of the Ashworth, and old marks on trees for line as far as to the river. If they are correct, the land in controversy is on the Bland survey. In contradiction of this a number of witnesses swear that said alleged bearing tree has no mark upon it, and has never had; that there are no old marks on said alleged line; and that the alleged evidence of lines and corners found by Rucker and Turner was made in an attempt to locate the adjoining junior surveys in the name of W. R. Carey as late as 1880.

The evidence in support of the verdict may be briefly summarized as follows: The S. E. and N. E. corners of the Ashworth, the S. E. corner of the Bland, and the lines of said surveys east of the Leon river, are not and have never been in dispute. Beginning at the N. E. corner of the Ashworth, as

shown by its original bearings, which are still standing, the course N. 71° W., as called for in the field notes, follows the recognized north line of said survey, passing the S. E. corner of the Bland at 1,900 varas, and continues on the division line of the Ashworth and Bland surveys to the river. If this line be continued as called for in the field notes, it will include the land sued for in the Ashworth survey. We quote from appellant's brief as follows: "The location of the N. E. corner of the Ashworth survey and the S. E. corner of the Bland survey was proved, and if the south line of the Bland and the north line of the Ashworth, which are the same, are run N. 71° W. as called for, then the land in controversy will be on the Ashworth, and plaintiff cannot recover." It is the contention of appellant that there is an offset in said line of about 187 varas at the Leon river. Said contention is based on the testimony of Rucker and Turner above referred to as to the location of the S. W. corner of the Bland.

There seems to be no dispute as to the south line and the S. W. corner of the Ashworth. If the west line of the Ashworth be run from its recognized S. W. corner, course, and distance as called for in its field notes, it will locate the N. W. corner of said survey as claimed by defendant. The surveyors Bradford and Bingham found an old marked line west of the river, which is an extension of the recognized line east of the river. In this they were corroborated by other witnesses.

3. If the land sued for is within the boundaries of the deed from May to defendant, the verdict should have been for the defendant under the plea of 10 years' statute of limitation. Aaron Ashworth conveyed to John D. May 510.41 acres of land in January, 1857, described as set out in finding of fact "d" herein. May conveyed said land to defendant Webb on November 18, 1859, and said deed was duly recorded in Bell county November 26, 1859. May testified that said land was surveyed off to him at the time he purchased the same, and that the northwest corner of said land was marked by a live oak bearing tree, and the north line of said land was plainly marked, and that the northeast corner of same was at the time of his sale to Webb clearly identified by the hackberry bearing tree called for in said deed, and that he showed these lines and corners to Webb at the time of said sale. He further testified that he had recently examined said line and corners, and that they were the same as those claimed by defendant, Webb. He particularly identified the north line by the northeast corner thereof being just above a sharp bend in the river, and just above the mouth of a branch, which was the only branch running into the river near said point, and that said line crossed and recrossed said branch; and he also identified the live oak bearing tree at the northwest corner of said survey. In this he was fully corroborated by the deposition of defendant, Webb. The testimony shows that defendant, Webb, has been in the actual possession of said land for 43 years.

[3] 4. Appellant contends that the verdict was not sustained by the evidence in this: That defendant Webb's fence was 304 varas west of the northwest corner of said 510.41-acre tract, and that appellant was entitled to recover the strip of land lying west of the land deeded to Webb. The evidence does not show that Webb is claiming any land west of that deeded to him by May; but, if he did, appellant's assignment in this regard would not be well taken for the reason that he did not sue for any land west of the land described in the deed to Webb. Appellant's petition describes the land sued for as 71 acres, beginning at the northeast corner of the tract conveyed by John D. May and wife to Joseph H. Webb, and running thence N. 71° W. 2,100 varas to the N. W. corner of the same; thence N. 19° W. 187 varas; thence N. 71° E. to the Leon river; and thence down said river with its meanderings to the beginning. If defendant has inclosed any land to the west of his tract, whether the same be on the Bland or on the Ashworth surveys, the appellant is not claiming the same in this suit.

[4] 5. Appellant assigns error upon the following portion of the court's charge: "You are charged that the fact that the south line of the Peyton Bland survey was to be a straight line run south 71° east from the southeast corner of said survey could not control, in case it is shown to your satisfaction, by preponderance of the evidence, that said line was not in fact a straight line when originally run and located on the ground; but that the surveyor made an offset in the same, which offset has been shown to your satisfaction by the evidence of marks or bearing trees now standing or shown to have been standing where said line was originally run and marked by said surveyor." The complaint is that this charge places the burden upon appellant to prove to the satisfaction of the jury that such line was a straight line, and therefore placed too great a burden upon appellant. We do not so construe said charge. The field notes called for said line to be a straight line. The appellant contended that there was an offset in said line at the Leon river. The court did not instruct the jury that it must be shown to their satisfaction that there was no offset, but told them that if it had been shown to their satisfaction that there was an offset to find for the plaintiff. There was certainly no affirmative error in this charge. Had the verdict of the jury been against the defendant, perhaps he might have complained of this charge as being on the weight of the evidence. In this connection the court fur-

ther charged the jury that: "Where the calls in a patent describe the boundaries of a survey as a straight line, then the burden of proof is upon the party claiming an . offset to prove, by a preponderance of the evidence, the existence of such offset; and you will have in mind that in determining the true location of any line of any survey you must follow, if possible, in the footsteps of the surveyor who originally made such survey on the ground." The court further charged the jury: "If you find that the south line of the Peyton Bland survey was run by the surveyor who originally made said survey as is claimed by the plaintiff, that is, if you find from a preponderance of the evidence that there is an offset in said line west of the Leon river, and made by the surveyor who originally surveyed said line, so˚ that the part of said line west of said Leon river is further south than the part of said line east of the Leon river, and that by reason of said offset in said line the 71 acres of land in controversy is included within the boundaries of the Peyton Bland survey, then, if you so find, you will find for the plaintiff; unless you find for the defendant under instructions hereinafter given you." These charges, we think, clearly indicated to the jury that they were to determine whether or not there was an offset in said line upon the preponderance of the evidence.

[5, 6] 6. The court instructed the jury that, if the land in controversy was within the limits of the Aaron Ashworth survey, they should find for the defendant without reference to his pleas of limitation; and also that, if they found that the land in controversy was within the limits of the deed from May, they should find for the defendant upon his plea of limitation. Appellant assigns error upon these charges. We hold that the same were properly given.

7. The court submitted to the jury the defendant's plea of 3, 5, and 10 years' limitation. The plea of three years' limitation should not have been submitted, inasmuch as if the land sued for was not within the boundaries described in the deed from May, the defendant had neither title nor color of title to the same; but the error in submitting the three years' statute of limitation does not require that this case should be reversed, for the reason that the evidence sustains the judgment as showing that all of the land sued for is within the Ashworth survey; and also it sustains the defendant's plea both of five and ten years' limitation as to all of the land sued for herein.

Appellant's brief contains 25 assignments of error. We have not discussed them seriatim, but the opinion as herein above groups them and disposes of all that are material. All of said assignments are overruled, and the judgment of the trial court is affirmed.

Affirmed.

## On Motion for Rehearing.

[7] On motion for rehearing, appellant insists that inasmuch as this court held that the three years' statute of limitation should not have been given in charge to . the jury, we should have reversed this case. The three years' statute is based on title connected with the sovereignty of the soil though some of the muniments be irregular. R. S. art. 3341. There was no pretense on the part of appellee of connecting title with the sovereignty of the soil, unless the land in controversy was a part of the Ashworth survey, and, if it was, appellee had a perfect title without reference to limitation. On the other hand, if we are to suppose that the jury, or any member thereof, based their or his verdict upon limitation under claim of paper title, not connected with the sovereignty of the soil, then the finding must have been that appellee was holding under the deed from May, and, if so, the undisputed evidence was that appellee had been in possession of the land purchased from May over 40 years; and hence, if the verdict of the jury was based on limitation, it must have been the same if the three years' statute of limitation had not been given in charge.

In fact, under the undisputed evidence as to ten years' limitation, it would not have been error for the court to have peremptorily instructed a verdict for defendant. This being the case, whatever errors, if any, may have been committed as to other issues become immaterial.

Motion overruled.